IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-01777-REB-CBS

TRENTON H. PARKER,
        Plaintiff,
v.

DANIEL S. MAUS, individually and in his official capacity;
ELIZABETH B. STROBEL, individually and in her official capacity;
BRUCE T. BARKER, individually and in his official capacity;
STEPHANIE L. ARRIES, individually and in her official capacity;
JOHN COOKE, individually and in his official capacity;
BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WELD, STATE OF
COLORADO,[1] and
In Re Case No. 07-CV-189 AND Case No. 11-CV-19, IN WELD COUNTY, STATE OF
COLORADO,
        Defendants.

---

## RECOMMENDATION OF MAGISTRATE JUDGE
## ON PENDING MOTIONS TO DISMISS

---

Magistrate Judge Shaffer

        THIS MATTER comes before the court on Defendants Barker, Arries and Cooke's

(hereinafter the "County Defendants") Motion to Dismiss Plaintiff's Amended Complaint (doc.

#25), filed on December 30, 2011, and Defendants Maus and Strobel's (hereinafter the "State

Defendants") Motion to Dismiss Amended Complaint (doc. #28), filed on January 3, 2012.

Pursuant to Minute Orders issued by this court on December 20, 2011 and January 4, 2012 (doc.

##27 and 29), Mr. Parker was instructed to file his responses to the above motions on or before

---

        [1]A review of the docket sheet gives no indication that the Board of County
Commissioners of Weld County, Colorado has ever been served with a summons and a copy of
the Amended Complaint.  In the absence of effective service, the Board of County
Commissioners should be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m).

January 31, 2012.

On January 30, 2012, Mr. Parker moved "For an Extension of Time to File Responses to 'Motions to Dismiss' for Good Cause" (doc. # 31), seeking an additional 20 days "to respond to the Motions to Dismiss."  Plaintiff acknowledged that separate motions had been filed by the Colorado Attorney General on behalf of Defendants Maus and Strobel and by the law firm of Hall & Evans, LLC, on behalf of Defendants Barker, Arries and Cooke.  I granted Plaintiff's request for extension of time and on January 31, 2012 issued a Minute Order (doc. #34) setting a new response date of February 21, 2012 for both motions.  That deadline passed without Mr. Parker filing the required responses.

On March 30, 2012, Mr. Parker filed a Motion to Allow Late Response for Good Cause (doc. #35).  This motion sought leave to file "the attached late 'Response' to the Colorado Attorney General's (CAG) Motions to Dismiss," claiming that Mr. Parker had contracted "a serious case of the new strain of pulmonary influenza, which caused the Plaintiff to become incapacitated" for four weeks.  Attached to this Motion to Allow Late Response was Plaintiff's "Response to Colorado Attorney General's Motion to Dismiss Suit Against Colorado Judges." On April 12, 2012, after hearing no opposition from the State Defendants, I accepted for filing Mr. Parker's Response to Colorado Attorney General's Motion to Dismiss Suit Against Colorado Judges (doc. #39).[2]  Defendants Maus and Strobel filed a Reply in Support of Motion

---

[2]In his March 30, 2012 Motion to Allow Late Response for Good Cause, Mr. Parker acknowledged that he "has not yet filed a Response in this case to Hall & Evan's 'Motion to Dismiss.'"  Plaintiff suggested that he was "still not up to full speed, but [would] do his absolute best to have said 'Response' filed with the District Court within a week."  To date, Mr. Parker has not filed a response to the County Defendants' motion and has not sought any further extensions of time.

to Dismiss Amended Complaint (doc. #41) on April 27, 2012.

Pursuant to the Order of Reference to United States Magistrate Judge (doc. #2), dated July 8, 2011, and the memoranda dated December 30, 2011 and January 4, 2012 (doc. ##26 and 29), the foregoing motions were referred to the Magistrate Judge.  I have carefully reviewed the pending motions to dismiss and related briefing, taken judicial notice of the court's entire file and considered the applicable case law.  For the following reasons, I conclude that the motions to dismiss should be granted.

## PROCEDURAL BACKGROUND

The *pro se* Plaintiff, Trenton Parker, commenced this litigation on July 6, 2011 against "Defendant Daniel S. Maus . . . a district court judge of Weld County, Colorado; Bruce T. Barker . . . the Weld County Attorney; Stephanie Arries . . . an Assistant Weld County Attorney; [and] John Cook[e] . . . the Sheriff of Weld County, Colorado."  The original Complaint asserted that the action "arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and Title 42 U.S.C. § 1983" based on alleged violations of "Plaintiff's constitutional and civil rights under the Fourth, Fifth, Sixth, Seventh, Eighth and Fourteenth Amendments."  Mr. Parker asserted that Defendants Maus, Barker and Arries committed constitutional violations when they

> intentionally, recklessly, and with deliberate indifference to Plaintiff's constitutional rights, subjected the Plaintiff to the following events, wrongs, torts, and orders during and following a two day contempt of court hearing which took place on June 24th and 25th of 2009, with the final court Order and determination of said trial executed and issued by Defendant Maus on July 9, 2009.

*See* Complaint, at ¶ 8.

According to the Complaint, Mr. Parker was arrested on June 24, 2009 for "unspecified

'Weld County Zoning Codes' on ranch property which the Plaintiff did not own." *Id.* at ¶ 9A. Mr. Parker contends he was forced to "undergo a QUICK 'trial by the court' . . . which took place in the Weld County District Court on the morning of June 24, 2009," in violation of the Plaintiff's Fifth, Sixth and Fourteenth Amendment rights to due process. *Id.* at ¶ 9C. Plaintiff claims that Defendant Maus never advised him of his rights or of the specific charges brought against him, denied him "the right to a jury trial," denied him the right "to contact and call witnesses in his defense," and denied his request for a continuance for purpose of consulting with his court-appointed counsel. *Id.* at ¶¶ 9E-H. At the conclusion of the trial on June 25, 2009, Defendant Maus found Mr. Parker guilty "of some unspecified zoning code violations" and sentenced Plaintiff to immediately serve a 90-day sentence in the Weld County Jail. *Id.* at ¶¶ 9J-K. Mr. Parker concedes that he did not appeal this conviction to the Colorado Court of Appeals, but blames that omission on the lack of adequate legal resources in the Weld County Jail. *Id.* at ¶¶ 9M-N. Plaintiff contends that "Defendant Cooke's jail management policy, has the clear net affect of depriving his jail's inmates of any possible meaningful access to the courts. . . . in violation of the Plaintiff's Fifth and Fourteenth Amendment right to due process of law." *Id.* at ¶ 9N.

In the wake of motions to dismiss filed by the County Defendants and Defendant Maus on July 28, 2011 (*see* doc. ##3 and 8), I directed Mr. Parker to filed responses on or before August 19, 2011. When Mr. Parker failed to meet that deadline, this court issued an Order to Show Cause (doc. #15) on October 24, 2011, directing Plaintiff to show cause on or before November 8, 2011 why this civil action should not be dismissed for failure to prosecute and failure to comply with court orders, the Local Rules of Practice of the United States District

Court for the District of Colorado, and the Federal Rules of Civil Procedure. On October 25, 2011, Mr. Parker filed a Late Answer and Motion to Amend Original Complaint for Cause (doc. #16). In this filing, Mr. Parker explained that he "quite simply, ran out of money and needed to come up with a plan to raise capital to continue this litigation and other related activities." Mr. Parker further stated that he

> need[ed] time to do substantial legal research which has been completed. Plaintiff freely admits that the Plaintiff's Complaint is replete with errors. Furthermore, Colorado's and Hall & Evans' list of errors enumerated and contained in the Plaintiff's Complaint are more or less correct and need to be addressed by way of revision and clarification. It is for those reasons the Plaintiff needs time to amend the Plaintiff's Complaint so as to be able to address and remedy each and every objection set forth by the Defendants.

*Id.* at ¶ 3. Although Mr. Parker offered a number of excuses for not responding to the pending motions to dismiss,[3] his Motion to Amend Original Complaint for Cause was not accompanied by a proposed amended complaint. At the conclusion of a status conference on December 1, 2011, Mr. Parker was given until December 9, 2011 to file a proposed amended complaint.

Plaintiff filed the current Amended Complaint (doc. # 23) on December 9, 2011. That pleading retained the original defendants and added Defendant Elizabeth Strobel, who was identified as a District Court Judge in Weld County, Colorado, and the Board of County Commissioners of Weld County, Colorado. In his Amended Complaint, Plaintiff alleges that

---

[3]In the same motion, Mr. Parker identified "other good reasons" for failing to comply with court-established briefing deadlines, including his involvement "at finalizing a new political party called the "Great American Party,' along with a new revolutionary party platform, newspaper, posters, buttons and operational facility and staff." Mr. Parker also claimed that he had missed deadlines in this case because he had "officially formed the Students Against War, Inc. (SAW), a Colorado Not For Profit corporation, established a web site . . . called 'studentsagainstwar.org," and "headed up the formation of the 'Anti-Lawyer League of the United States, Inc."

"for a period covering twelve (12) years, he has been subjected to and made to suffer an ongoing and continuous loss and abuse of his constitutional rights at the hands of the Weld County Commissioners and various Weld county employees." *See* Amended Complaint, at ¶ 8. Echoing the allegations in the original Complaint, Mr. Parker again contends that Defendants Maus, Strobel, Baker and Arries intentionally, knowingly and recklessly violated his rights under the Fourth, Fifth, Seventh, Eighth and Fourteenth Amendments. Mr. Parker also renews his assertion that Defendant Cooke's jail management policies violated his constitutional right of access to the courts.

The Amended Complaint provides additional background information to place the foregoing claims in context. It is alleged that in 1997, Mr. Parker and other individuals and companies conceived of a plan to develop a series of equestrian campgrounds to be located in Costilla County, Colorado, and created West World U.S.A., Inc., a Colorado corporation, to facilitate their business plan. In 2000, after some unforeseen circumstances, West World, U.S.A. joined with another entity to purchase 90 acres of ranch land ("The Ranch Property") in Weld County, Colorado. There followed litigation between Weld County and various parties involved with The Ranch Property. On February 23, 2007, Weld County filed a lawsuit, Case No. 07-CV-189, against Mr. Parker and Land Home Development Company relating to The Ranch Property and alleged zoning violations. According to Mr. Parker, Defendant Arries represented Weld County in Case No. 07-CV-189. At some point, Defendant Maus, the presiding judge in Case No. 07-CB-189 entered a default judgment in favor of Weld County. Judge Maus also issued an Order to Show Cause why Mr. Parker and Land Home Development Company should not be held in contempt. Thereafter, Judge Maus allegedly issued a warrant for Mr. Parker's arrest

6

based upon "a failure to appear at a contempt of court hearing in the 07-CV-189 matter" that had

been scheduled for May 19, 2009. *Id.* at ¶ 50. That arrest led to the contempt hearing on June

24-25, 2009. The Amended Complaint clarifies that while Defendant Maus sentenced Mr.

Parker to a 90-day jail sentence, service of that sentence was deferred for 45 days. Mr. Parker

surrendered at the Weld County Jail and began serving his sentence on September 8, 2009. *Id.* at

¶¶ 54 and 57.

The Amended Complaint's references to Defendant Strobel are limited to the following

paragraphs:

> 61.    On September 23, 2010, Judge Maus disqualified himself as a judge in 07-
> CV-189 and the case was moved to Division 3, Judge Elizabeth B. Strobel.
>
> 62.    On November 26, 2010, the District Court (Judge Strobel) entered an
> order dismissing the contempt citation against Parker in 07-CV-189.
>
> 63.    On November 21, 2010, Judge Strobel entered an order releasing the Lis
> Pendens against Land Home Development Company and The Ranch property,
> even though said property had not been in the name of "Land Home" for almost
> three years.

*Id.*

Finally, the Amended Complaint alleges that "[o]n January 5, 2011, Weld County, via

Defendants Barker and Arries, filed another zoning code violation law suit, but this time it was

against Rio Grande Canyon Properties, Inc., Case No. 2011-CV-19." *Id.* at ¶ 64. Mr. Parker

contends that Defendant Arries also filed another lis pendens against The Ranch Property well

beyond "Colorado's two year statute of limitations to bring a civil action." *Id.*

In his Prayer for Relief, Mr. Parker seeks compensatory damages, punitive damages and

"such other and further relief as this court or jury may deem just, fit, reasonable and

appropriate." Plaintiff further "seeks relief in the form of a reversal of the finding of contempt in

7

Case No. 07-CV-189," as well as "[t]he reversal of the default judgment entered in Case No. 07-CV-189."

## ANALYSIS

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court does not have subject matter jurisdiction over the matter. The determination of subject matter jurisdiction is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. Const. Art. III, §2; *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994). The court applies a rigorous standard of review when presented with a motion to dismiss for lack of subject matter jurisdiction. *Consumers Gas & Oil, Inc. v. Farmland Indus. Inc.*, 815 F. Supp. 1403, 1408 (D. Colo. 1992). "[T]he party invoking federal jurisdiction bears the burden of proof." *Marcus v. Kansas Dept. of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

8

To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Id.*  As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  A complaint must set forth sufficient facts to elevate a claim above the level of mere speculation.  *Id.*

> Generally, [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. However, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief.  Even though modern rules of pleading are somewhat forgiving, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.  The plausibility standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.

*Jordan-Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, 2009 WL 2924777, at *2 (D. Colo. Sept. 9, 2009) (internal quotation marks and citations omitted).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

The court's analysis of the pending motions and Mr. Parker's response is complicated by a lack of clarity in the Amended Complaint itself.  Although the current pleading has two

different sections entitled "Claims for Relief," neither contains separately denominated causes of action.  Yet, Mr. Parker has provided five paragraphs prefaced with the same "LACK OF JURISDICTION" legend.  In that respect, the Amended Complaint reads more like a legal argument in response to Defendants' earlier motions to dismiss.  Over the course of 107 paragraphs and 18 pages of text, Mr. Parker recounts business endeavors going back to 1997, zoning ordinance litigation in 2002 and 2207, and alludes to alleged malpractice or malfeasance on the part of at least one attorney who purportedly represented Mr. Parker in connection with those proceedings.  Many of the paragraphs in the Amended Complaint are devoid of any reference to a named defendant.  Still, for all the "background" facts provided, the court is left with the clear impression that Plaintiff's claims in this case arise out of the proceedings that occurred on June 24-25, 2009 and his incarceration that followed.  If the court's understanding is incorrect, that mistake does not stem from any lack of effort in trying to parse through Mr. Parker's often rambling account.

The court cannot be this *pro se* litigant's advocate.  *Hall v. Bellmon*, 935 F. 2d 1106, 1110 (10th Cir. 1991).   A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint").  The court may disregard and dismiss without a hearing claims that are vague and conclusory. *Johnson v. Richards*, 617 F. Supp. 113, 114 (W.D. Okla. 1984).  *See also Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986) (a failure to provide specific factual allegations renders a

complaint vague and conclusory).

I.      *The State Defendants' Motion*

Defendants Maus and Strobel's motion to dismiss asserts, among other grounds, absolute immunity under the Eleventh Amendment, the common doctrine of judicial immunity, and the *Rooker-Feldman* doctrine.

A.      Eleventh Amendment

States are protected by Eleventh Amendment immunity.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Meade v. Grubbs*, 841 F.2d 1512, 1525-26 (10th Cir. 1988).  "It is well established that absent an unmistakable waiver by the state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the amendment provides absolute immunity from suit in federal courts for states and their agencies." *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994), *overruled on other grounds by Ellis v. University of Kansas Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998).[4] Moreover, an assertion of Eleventh Amendment immunity directly implicates the subject matter jurisdiction of the district court.  *See Kirby v. Dallas County Adult Probation Dept.*, 359 Fed. Appx. 27, 32 (10th Cir. 2009), quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

---

[4] The Nineteenth Judicial District (which includes Weld County) should be considered a state agency under the arm-of-the-state doctrine which extends Eleventh Amendment immunity to "entities created by state governments that operate as alter egos or instrumentalities of the states." *See Masters v. Gilmore*, 663 F. Supp. 2d 1027, 1054 (D. Colo. 2009) (noting that the Colorado Supreme Court has held that a judicial district is a political subdivision of the state entitled to Eleventh Amendment immunity). *See also Brown v. Adams Co. (Co.'s Seventeenth) Judicial District,* 2011 WL 090237, at *1 (D. Colo. Jan. 10, 2011) (holding that because the Adams County District Court is a state entity, "whatever claims [the plaintiff] may seek to assert against it would be barred by Eleventh Amendment immunity").

Here, the State of Colorado has not waived its Eleventh Amendment immunity. *Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988). If the Eleventh Amendment applies, it confers total immunity from suit, not merely a defense to liability. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993).

To the extent that Mr. Parker is suing Defendants Maus and Strobel in their official capacities, he is in reality attempting to impose liability on their employer, the State of Colorado.[5] *See Meade*, 841 F.2d at 1529. A suit against a state official in his or her official capacity is treated as a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Absent a waiver, the Eleventh Amendment forbids a suit for money damages in federal court against state officials in their official capacity. *Ambus*, 995 F.2d at 994. Accordingly, the claims for monetary relief against Defendants Maus and Strobel in their official capacity must be dismissed for lack of subject matter jurisdiction.[6]

B.      Judicial Immunity

It is well-established that where a judicial officer is named as a defendant in an action under 42 U.S.C. § 1983, he or she is immune from civil liability even when the challenged

---

[5]To the extent that Defendants Barker and Arries also are being sued in their official capacity, those § 1983 claims are against their employers and are barred by the Eleventh Amendment. *Cf. Romero v. Boulder County DA's Office*, 2004 WL 100523 (10th Cir. 2004); *Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989). Any claim for monetary damages against Defendants Barke and Arries in their official capacity should be dismissed.

[6]Although the Eleventh Amendment and the doctrine of judicial immunity generally do not bar a suit for prospective injunctive relief, *see, e.g., Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984), *superseded by* 42 U.S.C. § 1983 amendments, and *Quern v. Jordan*, 440 U.S. 332, 337 (1979), the only equitable relief sought in the Amended Complaint is the "reversal of the finding of contempt" in Case No. 07-CV-189.

actions are committed maliciously or in excess of their jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). A judicial officer is only liable when he or she acts in the "clear absence of all jurisdiction." *Id.* The Supreme Court has recognized that '[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 554 (1967), *overruled in part on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1082).

> This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or correction. . . . We do not believe that this settled principle of law was abolished by § 1983, which make liable "every person" who under color of law deprives another person of his civil rights.

*Id.* (internal citations omitted).

Certainly, a judge is not immune for actions of a judicial nature that are taken in the complete absence of all jurisdiction. *See Martinez v. Lucero*, 2012 WL 2175772, at *17 (D. N.M. May 31, 2012), quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). However, Article 6, Section 9 of the Colorado Constitution provides that "the district courts . . . shall have original jurisdiction in all civil, probate, and criminal cases." The jurisdiction of the state district courts broadly extends to all cases in law and equity. *See People v. Morley*, 234 P. 178 (Colo. 1925); *Patterson v. People*, 130 P. 618 (Colo. 1913); *Telluride Co. v. Varley*, 934 P.2d 888 (Colo. App. 1997). Given the expansive jurisdiction accorded the Colorado district courts, Defendants Maus and Strobel enjoy absolute immunity even if their exercise of authority was flawed. *Cf. Stump*,

435 U.S. at 359.  There are no well-pled facts in the Amended Complaint, Mr. Parker's legal

arguments notwithstanding, that suggest Defendants Maus or Strobel were acting in the clear

absence of all jurisdiction when they entered orders in judicial proceedings involving Mr. Parker.

*Cf. Milton v. Wilson*, 607 F. Supp. 510, 511 (D. Colo. 1985) (dismissing claims against state

district court judge where plaintiff failed to allege facts suggesting defendant had acted in the

clear absence of all jurisdiction).

Mr. Parker attempts to circumvent the doctrine of judicial immunity with an argument

that is wholly without merit.  Plaintiff reasons that Defendants Maus and Strobel acted without

"any lawful constitutional authority, jurisdiction or lawful color of title," and therefore do not

enjoy absolute immunity because they were placed in office through an unconstitutional judicial

appointment process.  According to Mr. Parker, Article VI, Section 9 of the Colorado

Constitution is "in direct violation of the United States Constitution, Article IV, Section 4,

Amendment IX, Amendment X, and Amendment XIV, Section 2."  *See* Plaintiff's Response to

Colorado Attorney General's Motion to Dismiss Suit Against Colorado Judges, at ¶¶ 4 and 5.

According to Mr. Parker, Section 2 of the Fourteenth Amendment "establishes only one way for

judicial officers to be elected and it is not by starting off with one group of political appointees (a

committee) appointing another group of politically (sic) appointments (insider lawyers frothing

to be appointed judges)."  *Id*. at ¶ 15.  Plaintiff insists that Section 2 "clearly reserves the right to

elect state judicial officers (judges) to the people, and not to some political appointment

committee."

In *Holley v. Askew*, 583 F.2d 728 (5th Cir. 1978), the Fifth Circuit upheld a procedure

under which the Governor of Florida was empowered to fill all judicial vacancies at the appellate

level, subject to the appellate judge's retention by receiving periodic approval from the voters.

The court in *Holley* rejected the argument that appointment of state judges violates the

Fourteenth Amendment, explaining that

> To uphold plaintiff's contentions, this Court would have to accept one of two
> untenable positions: (1) that the United States Constitution compels a state to
> make judicial positions elective rather than appointive; or (2) that a state is
> required by the United States Constitution to continue electing judges once it has
> made the initial decision to do so.  Both arguments fly in the face of repeated
> statements by the Supreme Court that the regulation of state elections is wholly
> within the authority of the individual states.

*Id.* at 730.  The Fifth Circuit specifically found that the drafters of Section 2 of the Fourteenth

Amendment "had no aim to require the states to fill any official position by election."  *Id.  See

also Kirk v. Carpeneti*, 623 F.3d 889 (9th Cir. 2010) (in upholding the operation of Alaska's merit

selection system for judges, noted that "the Fourteenth Amendment does not protect a

generalized 'right to vote,' but rather protects a citizen's right to participate in elections on equal

footing with other citizens in the jurisdiction"); *Carlson v. Wiggins,* 760 F. Supp. 2d 811, 819-22

(S..D. Iowa 2011) (holding that voters did not have a Fourteenth Amendment right to equal

participation in the selection of state judicial officials and noting other federal courts that have

rejected challenges to plans that provide for merit selection of state judges).

While Plaintiff may wish to change Colorado's current method for appointing state

judges, that public policy stance does not change the unassailable fact that Defendants Maus and

Strobel were acting within their jurisdiction as judicial officers presiding over proceedings

involving Mr. Parker.  Mr. Parker certainly is entitled to pursue his goal of an elected state

judiciary through public discourse and debate in the marketplace of ideas.  However, Mr. Parker

will find no relief in the Fourteenth Amendment or the weight of judicial precedent.

15

Accordingly, any claims for money damages against Defendants Maus and Strobel in their individual capacities are barred by judicial immunity and must be dismissed.[7]

     C.     *Rooker-Feldman*

Finally, the State Defendants raise the *Rooker-Feldman* doctrine as a bar to Plaintiff's claims in this case.[8]  The *Rooker-Feldman* doctrine implicates the federal court's subject matter jurisdiction.  *Cf. Guttman v. Khalsa*, 401 F.3d 1170, 1173 n. 2 (10th Cir.) (holding that *"Rooker-Feldman* is a matter of federal law and operates as a subject-matter jurisdictional bar that may be raised at any time"), *judgment vacated on other grounds*, 546 U.S. 801 (2005).  *See also Kenmen Engineering v. City of Union*, 314 F.3d 468, 479 (10th Cir. 2002) ("the *Rooker-Feldman* doctrine is a *jurisdictional* prohibition" (emphasis in original)), *overruled in part on other grounds by Exxon Mobil Corp. V. Saudi Basic Industries Corp.*, 544 U.S. 280, 292 (2005) and *Lance v. Dennis*, 546 U.S. 459, 465-66 (2006).

---

     [7]While the doctrines of sovereign and judicial immunity are sufficient to resolve all claims asserted against Defendants Maus and Strobel, I separately note that the Amended Complaint does not appear to allege any unconstitutional action on the part of Judge Strobel. The Amended Complaint simply states that Defendant Strobel dismissed the contempt citation against Mr. Parker in Case No. 07-CV-189 after Judge Maus disqualified himself in that case. Elsewhere, the Amended Complaint alleges that Judge Strobel entered an order releasing the Lis Pendens against Land Home Development Company and The Ranch Property. This court is at a loss to see how either of these actions equate to a constitutional violation.  "It is axiomatic that, to prevail on a damages claim for a constitutional violation pursuant to § 1983, the plaintiff must show that the defendant, acting under color of state law, 'personally participated in the alleged violation.'" *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007).  *See also Arocho v. Nafziger*, 2010 WL 681679, at 10 (10th Cir. Mar. 1, 2010) ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct").

     [8]In fairness, the County Defendants also made a passing reference to the *Rooker-Feldman* doctrine on page 14 of their 15-page motion.  While the County Defendants did not address this issue to any extent, they remain the beneficiaries of the State Defendants' more extensive analysis.

> Under 28 U.S.C. § 1257, "federal review of state court judgments can be obtained only in the United States Supreme Court."  As a result, the *Rooker-Feldman* doctrine prohibits a lower federal court from considering claims actually decided by a state court, and claims "inextricably intertwined" with a prior state-court judgment.  In other words, *Rooker-Feldman* precludes "a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.

*Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (citations omitted).  In the Tenth Circuit, the *Rooker-Feldman* doctrine applies to all state-court judgments.  *Kenman,* 314 F.3d at 473.

The Amended Complaint concedes that the judgment entered by Defendant Maus was an appealable order.  Yet, the Amended Complaint explicitly asks this federal court to provide "relief in the form of a reversal of the finding of contempt in Case No. 07-CV-189 due to the violations of his civil and constitutional rights claimed herein" and "reversal of the default judgment entered in Case No. 07-CV-189, as well as compensatory and punitive damages resulting from same state proceeding.  Read literally, Mr. Parker's lawsuit seeks to "undo" the prior decision of the Weld County District Court.  As such, this action constitutes a "'particularized challenge to an adjudication against [Mr. Parker] in state court.'"  *Id.*, at 477, quoting *Ritter v. Ross*, 992 F.2d 750, 755 (10th Cir. 1993).  As such, the present lawsuit is barred by *Rooker-Feldman*.

Courts have recognized an exception to the *Rooker-Feldman* doctrine where the plaintiff did not have a full and fair opportunity to litigate his claim in the prior state-court proceeding.  *See Johnson v. Rodrigues*, 226 F.3d 1103, 1110 (10th Cir. 2000).  However, that exception has been limited to those situations where the federal plaintiff was not a party to the state court proceeding.  *Kenman*, 314 F.3d at 478 n.9 and 479-80.  Mr. Parker's own allegations concede that he was a party to the state-court case in question, and further acknowledge that he was

17

represented by court-appointed counsel at the June 24-25, 2009 contempt proceedings.  I

conclude from the allegations in the Amended Complaint that Mr. Parker was a party to the

state-court proceedings and was afforded an opportunity to litigate his claims and defenses, both

before Judge Maus and the Colorado Court of Appeals.  In the absence of subject matter

jurisdiction under the *Rooker-Feldman* doctrine, Plaintiff is barred from seeking judicial review

in this court of proceedings in Civil Case No. 07-CV-189.

II.      *The County Defendants's Motion*

The County Defendants have moved to dismiss the Amended Complaint pursuant to Fed.

R. Civ. P. 12(b)(1) and 12(b)(6).  More specifically, the County Defendants argue that Mr.

Parker's claims are barred by the statute of limitations or, alternatively, by the Supreme Court's

decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).  As additional grounds for dismissal, the

County Defendants claim absolute immunity for any actions taken by Defendants Barker and

Arries in the context of judicial proceedings and qualified immunity "to the extent Plaintiff's

claims could ever survive any timeliness or absolute immunity analysis."  Finally, the County

Defendants argue that Plaintiff's substantive claims do not state a cognizable claim for relief for

various reasons.  Once again, I note that Mr. Parker failed to file a response to the County

Defendants' motion to dismiss the Amended Complaint.

A.      Prosecutorial Immunity

Although the Amended Complaint purports to assert claims against Defendants Barker

and Arries, the allegations are drafted in a conclusory fashion without any attempt to attribute

specific actions to a particular defendant.  For example, Mr. Parker alleges that Defendants

Barker and Arries, together with Defendant Maus, "caused the Plaintiff to be arrested on June

18

24th, 2009" for unspecified zoning violations, and that Defendants Barker and Arries "caused the Plaintiff to undergo a QUICK 'trial by the court'" in violation of Mr. Parker's constitutional rights. *See* Amended Complaint, at ¶¶ 89 and 91. It is further alleged that Defendants Barker and Arries "supported" Judge Maus' denial of Plaintiff's right to a jury, "supported" Judge Maus' refusal to allow Mr. Parker to call witnesses on his own behalf, and "supported" Judge Maus' denial of Mr. Parker's request for a continuance. *Id.* at ¶¶ 94-96. Finally, the Amended Complaint claims that Defendants Barker and Arries "supported" Judge Maus' decision to find the Plaintiff guilty "of some unspecified zoning code violations" and his order requiring Mr. Parker to surrender to begin serving his 90-day sentence. *Id.* at ¶¶ 99-100. It is undisputed, however, that during the relevant time period Defendant Barker was the Weld County Attorney and Defendant Arries was a Weld County Assistant Attorney.

On a motion to dismiss under Rule 12(b)(6), the court is required to accept all well pleaded allegations of the complaint as true and construe them in the light most favorable to Mr. Parker. *Sutton v. United Air Lines, Inc.*, 130 F.3d at 896-97. However, I am also mindful of established precedents holding that prosecutors are entitled to absolute immunity against § 1983 claims while acting in their advocacy role on behalf of the state. *See, e.g., Imbler v. Pachtman*, 424 U.S. 409, 420 (1976); *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994) (held that trial court properly dismissed plaintiff's *pro se* § 1983 claim against deputy district attorney; noted that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity"). *See also Burns v. Reed*, 500 U.S. 478, 486 (1991) (recognizing that prosecutors are entitled to absolute immunity in presenting the government's

case at trial, even where their acts include the use of false testimony); *Calvert v. Safranek*, 209 Fed. Appx. 816, 819 (10th Cir. 2006) (county attorney enjoyed absolute immunity from damages under § 1983 for initiating a prosecution against a property owner for violating county zoning ordinances); *Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000) ("[S]tate attorneys . . . who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings" are "absolutely immune from suit under section 1983 concerning activities 'intimately associated with the judicial . . . process.'"); *Stepanek v. Delta County*, 940 P.2d 364, 368-69 (Colo. 1997) (holding that "the common law doctrine of absolute immunity extends to all persons who are an integral part of the judicial process," including a county attorney). *But see County of Adams v. Hibbard*, 918 P.2d 212,220-21 (Colo. 1996) (holding that a county attorney and assistant county attorney were not entitled to qualified immunity for the unauthorized destruction of plaintiff's residence and personal property where they knowingly and intentionally acted outside the authority given them by an administrative law judge's order).

Accepting the well-pled allegations in the Amended Complaint as true, as I must on a motion to dismiss, it is clear that Mr. Parker is challenging actions taken by Defendants Barker and Arries in the context of judicial proceedings that occurred on June 24-25, 2009. As such, these actions fall within the well-recognized common law doctrine of prosecutorial immunity. Therefore, the claims against Defendants Barker and Arries should be dismissed.

B.      *Heck v. Humphrey*

To the extent that Mr. Parker is challenging his contempt conviction, his § 1983 claims against Defendants Barker and Arries that his claims are barred by the favorable termination rule

first announced in *Heck v. Humphrey*, 512 U.S. at 486-87.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance or a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.*

"The purpose behind *Heck* is to prevent litigants from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions." *Butler v. Compton*, 482 F. 3d 1277, 1279 (10th Cir. 2007) (citation omitted). "The starting point for the application of *Heck* then is the existence of an underlying conviction or sentence that is tied to the conduct alleged in the § 1983 action." *Id.* "In other words, a § 1983 action implicates Heck only as it relates to the conviction that it would be directly invalidating." *Id.*

Here, Mr. Parker appears to be seeking money damages for prosecutor misconduct that allegedly resulted in his unconstitutional prosecution, conviction and imprisonment. As noted above, the allegations against Defendant Barker and Arries directly challenge the validity of Plaintiff's conviction. *See, e.g., Franklin v. Thompson*, 981 F.2d 1168, 1170 (10th Cir. 1992) ("plaintiff's misdemeanor convictions foreclose her from challenging the legality of her arrest in a subsequent civil action")

Admittedly, the Amended Complaint states that on November 26, 2010, Defendant Strobel "entered an order dismissing the contempt citation against Parker in 07-CV-189." *See* Amended Complaint, at ¶ 62. However, this court must assume, taking into consideration all the

allegations in the Amended Complaint, that Judge Strobel's actions on November 26, 2010, did

not equate to a reversal of Mr. Parker's conviction or expunge that conviction from his record.

Mr. Parker concedes that he served his 90-day contempt of court sentence.  *Id.* at ¶¶ 57 and 100-

101.  With this action, Plaintiff specifically seeks "a reversal of the finding of contempt in Case

No. 07-CV-189."  Without some indication that the challenged conviction was invalidated in Mr.

Parker's favor by being "reversed on direct appeal, expunged by executive order, declared

invalid by a state tribunal authorized to make such determination, or called into question by a

federal court's issuance of a writ of habeas corpus," the claims against Defendants Barker and

Arries relating to or arising from that conviction are necessarily barred by *Heck*.  *See Burden v.

Wood*, 200 Fed. Appx. 806, 807, 2006 WL 2949141, *1 (10th Cir. Oct. 17, 2006) (false arrest

claim, in light of a conviction that has not been overturned on direct appeal or otherwise

rendered invalid, cannot be maintained in light of *Heck*); *Duamutef v. Morris*, 956 F. Supp. 1112

(S.D.N.Y. 1997) (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, First

Amendment retaliation, and equal protection for failure to satisfy *Heck*).  *See also Lewis v. City

of Waxahachie*, 465 Fed. Appx. 383, 385 (5th Cir. 2012) (holding that the plaintiff's § 1983

claims relating to her conviction for contempt and resulting 180-day prison sentence were

properly dismissed in the absence of any showing that her contempt conviction had been

overturned, expunged or otherwise invalidated).   For the foregoing reasons, I recommend that

the claims against Defendants Barker and Arries be dismissed without prejudice.

  *Heck*, however, does not apply to those claims that do not necessarily imply the invalidity

of a conviction.  That doctrine limits only challenges to the fact or duration of a prisoner's

sentence, not the conditions of his confinement.  *See Slack v. Jones*, 2009 WL 3166963, *3 (10th

Cir. 2009) (holding that *Heck* did not apply where the plaintiff-prisoner was challenging the conditions of his confinement and the loss of privileges).  Accordingly, this affirmative defense should be denied as to Defendant Cook..

  C.  Statute of Limitations

  If the *Heck* doctrine governs the § 1983 claims against Defendants Barker and Arries, then those claims have not yet accrued and there is no need for the court to address the statute of limitations defense as to those Defendants.  If, however, *Heck v. Humphrey* does not apply, then Mr. Parker's claims relating to the contempt proceedings on June 24-25, 2009, as well as any misconduct allegedly that occurred prior to those dates, would seem to be barred by the applicable two-year statute of limitations.

  Federal courts look to the applicable state statute of limitations to determine the timeliness of a claim under § 1983.  *See Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993). Colorado law provides a two-year statute of limitations for actions brought pursuant to § 1983. *See* Colo. Rev. Stat. § 13-80-102(g) (establishing a two-year limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided");  *Blake v. Dickason*, 997 F.2d at 750 (applying § 13-80-102 to § 1983 claim).

  The determination of when a § 1983 action accrues is controlled by federal rather than state law.  *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (citation omitted).  "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of injury which is the basis of his action."  *Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994).  "[I]t is not necessary

that a claimant know all of the evidence ultimately relied on for the cause of action to accrue."

*Baker v. Board of Regents of State of Kansas*, 991 F.2d 628, 632 (10th Cir. 1993). Thus, under

Colorado's applicable two-year statute of limitations provision, Mr. Parker's claims against

Defendants Barker and Arries (as well as Defendant Maus) accrued on June 24 and 25, 2009

when the alleged constitutional violations (*e.g.,* denial of a jury trial, the refusal to allow the

defense to call witnesses, the refusal to grant a defense continuance, entry of a guilty finding and

imposition of sentence)) were occurring during courtroom proceedings in which he was

physically present with counsel. As Mr. Parker initiated this action on July 6, 2011, any claims

that accrued prior to July 6, 2009, are barred by the statute of limitations.

A complaint is subject to dismissal for failure to state a claim for relief if the allegations

in the complaint show that relief is barred by the applicable statute of limitations. *Jones v. Bock*,

549 U.S. 199, 215 (2007). *Cf. Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996)

(quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at

352 (1990) ("'[a] complaint showing that the statute of limitations has run on the claim is the

most common situation in which the affirmative defense appears on the face of the pleading,'

rendering dismissal appropriate").

> [D]ismissal under Rule 12(b)(6) on the basis of a limitations defense may be
> appropriate when the plaintiff effectively pleads herself out of court by alleging
> facts that are sufficient to establish the defense. . . . Further, the plaintiff bears the
> burden of "plead[ing] circumstances which would indicate why the [cause of
> action] was not discovered earlier and which would indicate why the statute
> should be tolled."

*Owner Operator Independent Drivers Association, Inc. v. Comerica Bank*, 540 F. Supp.2d 925,

929 (S.D. Ohio 2008) (internal citations omitted). *See also Walton v. Potter*, 2006 WL 3341187,

*1 (N.D. Ill. 2006) ("The statute of limitations issue may be resolved definitively on the face of

the complaint when the plaintiff pleads too much and admits definitively that the applicable

limitations period has expired.  But, '[u]nless the complaint alleges facts that create an ironclad

defense, a limitations argument must await factual development.'").  *But see Tolbert v. National*

*Harmony Memorial Park*, 520 F. Supp.2d 209, 211 (D.D.C. 2007) ("[B]ecause statute of

limitations issues often depend upon contested questions of fact, 'courts should hesitate to

dismiss a complaint on statute of limitations grounds based solely on the face of the

complaint'").

In this case, based on the specific facts alleged in the Amended Complaint, I conclude

that the claims against Defendants Barker and Arries are barred by the applicable statute of

limitations.  However, because the court cannot discount the possibility that Mr. Parker could

allege facts that would support a theory of equitable tolling, I recommend that the claims against

these defendants be dismissed without prejudice.

D.     Denial of Access to the Courts

Mr. Parker's only substantive allegations against Defendant Cook are found in

paragraphs 101 and 102 of the Amended Complaint.  There Mr. Parker contends that his ability

to gain access to the Colorado Court of Appeals was "constitutionally handicapped . . . due to the

fact that the Weld County Jail has no law library or any Federal or Colorado law books and the

Weld County Jail operates an inmate phone calling system that costs from $5.00 to $7.00 per

minute."  The Amended Complaint states that while the Weld County Jail does have a computer

"which jail officials call a 'Law Library,'" the computer does not come with operating manuals

and the Jail offers no instruction on how the computer works.  Mr. Parker alleges that Defendant

Cook willfully runs the Weld County Jail "with the intention of keeping prisoners from having

any reasonable and meaningful access to the courts" in violation of the Plaintiff's Fifth and Fourteenth Amendment rights.

Prison inmates have a constitutional right to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. at 823. That right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. "Conversely, prison officials may not affirmatively hinder a prisoner's efforts to  construct a nonfrivolous appeal or claim." *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992). "Any deliberate impediment to access [to the courts], even a delay of access, may constitute a constitutional deprivation." *Id.* (internal quotation marks and citation omitted).

Although providing access to a law library is an acceptable means of effectuating the right of access to the courts, the United States Constitution does not guarantee prisoners "an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Access to the law library may be restricted, as long as the restrictions are reasonable. *See Johnson v. Avery*, 393 U.S. 483, 490 (1969). Inmates need not be afforded unlimited access to a library. *Twyman v. Crisp*, 584 F.2d 352, 358 (10th Cir. 1978). "[R]estricted access to the law library is not per se denial of access to the courts." *Id.* at 357. Prison policies which reasonably limit times, places and the manner in which inmates may engage in legal research and the preparation of legal papers are permissible as long as the regulations do not frustrate access to the courts. *Id.* at 358. *See also Shell v. Brun*, 585 F. Supp. 2d 465, 468 (W.D.N.Y. 2008) ("Prison officials may place reasonable restrictions on inmates' use of facility law libraries, as long as those restrictions do not interfere with inmates' access to the courts."). Prison officials need only

provide inmates with "a reasonably adequate opportunity" to present their legal claims. *Petrick v. Maynard*, 11 F.3d 991, 994 (10th Cir. 1993) (quoting *Bounds v. Smith*, 430 U.S. at 825).[9]

More to the point, to the extent that Mr. Parker is suing Defendant Cook in his individual capacity, individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility. *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").

A defendant may not be held liable merely because of his or her supervisory position. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). Government officials may not be held

---

[9]To state a claim for denial of access to the courts, a plaintiff must also show that he suffered an injury caused by "shortcomings in the library or legal assistance program." *Lewis*, 518 U.S. at 351; *accord Wardell v. Duncan*, 470 F.3d 954 (10th Cir. 2006). In order to satisfy the actual injury requirement, the plaintiff must show that, by denying plaintiff access to the law library, prison officials frustrated or impeded the plaintiff's ability to file non-frivolous direct appeals from his conviction, a habeas corpus petition or a civil rights claim pursuant to § 1983 "'to vindicate basic constitutional rights.'" *Lewis*, 518 U.S. at 351, 354-55. *See also Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from Defendants' actions."). Although Mr. Parker contends that he "spent hours, without any success, attempting to figure out how the Weld County Jail's black box computer worked," he describes no other affirmative steps he took to pursue an appeal or seek further relief, particularly where Plaintiff acknowledges he was represented in the same case by court-appointed counsel. *See Ramirez v. Holmes*, 921 F. Supp. 204, 207 (S.D.N.Y. 1996) (Where a plaintiff claims that prison officials denied him access to the law library, the plaintiff "must allege that the deprivation proximately caused some prejudice or denial of a legal claim."). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 356.

liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1290 (D. Colo. 2009) ("*respondeat superior* is not within the purview of § 1983"). "There is no concept of strict supervisor liability under § 1983." *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151-52 (10th Cir. 2006). "Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights." *Id.* There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). *See also McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) (an individual cannot be held liable in a section 1983 action unless he "participated or acquiesced" in an alleged constitutional violation); *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

> [W]hen a plaintiff sues an official under *Bivens* or § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well.

*Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  Therefore, in order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged

constitutional deprivation." *Id.* at 1199.

The Amended Complaint does not alleged that Defendant Cook had any specific knowledge of Mr. Parker's circumstances. Plaintiff's allegations do not suggest or support any inference that Defendant Cook any direct involvement in, personal participation in, or supervisory liability for the alleged violation. Mr. Parker has not adequately set forth any facts that would demonstrate "an affirmative link between the supervisor and the violation, namely the active participation or acquiescence of the supervisor" in the alleged denial of access to the courts. *Serna*, 455 F.3d at 1151 (internal quotation marks and citations omitted). To the extent that Mr. Parker wishes to hold Defendant Cook liable simply by virtue of his status as Sheriff of Weld County, he fails to state a claim for which relief can be granted. Plaintiff's failure to allege or demonstrate the requisite personal participation leaves no basis for holding Defendant Cook individually liable under § 1983 for the alleged denial of access to the courts. This claim is properly dismissed from this action.[10]

## CONCLUSION

For the foregoing reasons, this court RECOMMENDS that Defendants Maus and Strobel's Motion to Dismiss Amended Complaint (doc. #28) be GRANTED and that those defendants be dismissed from this action with prejudice based upon their proper assertion of judicial and sovereign immunity. I further RECOMMEND that Defendants Barker, Arries and Cook's (hereinafter the "County Defendants") Motion to Dismiss Plaintiff's Amended Complaint (doc. #25) be GRANTED. The claims brought against Defendants Barker, Arries and

---

[10] In view of the findings and analysis presented in this Recommendation, this court is not required to address the other arguments raised by the County and State Defendants in their motions to dismiss.

Cook in their official capacity should be dismissed with prejudice.  All other claims against these Defendants should be dismissed without prejudice.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d

1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 16th day of August, 2012.

BY THE COURT:

 s/ Craig B. Shaffer
United States Magistrate Judge